# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# Charlotte Division

| | |
|---|---|
| DANIEL MARQUES, *Plaintiff*, v. BANK OF AMERICA CORPORATION, *Defendant*. | CIVIL ACTION NO. 3:18-cv-228 |

## COMPLAINT

Plaintiff Daniel Marques, individually, and as the class representative on behalf of all others similarly situated, brings this employment discrimination suit against Bank of America Corporation ("Bank of America"), a financial services company with a principal place of business located at Bank of America Corporate Center, 100 North Tryon Street, Charlotte, NC 28255.

## SUMMARY OF CLAIM

1. Bank of America Corporation denies employment opportunities to entire categories of individuals authorized to work in the United States based on their alienage. Specifically, Bank of America categorically denies employment contracts to applicants for a position as a financial advisor within the company if they are lawfully present noncitizens whose valid federal work authorization is subject to renewal after a future date of expiration. This facially discriminatory company-wide policy and/or practice constitutes intentional discrimination based on alienage and is unlawful under the Civil Rights Act of 1866, as codified by 42 U.S.C. § 1981.

1

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

3. This Court is empowered to issue a declaratory judgment and further necessary or proper relief pursuant to 28 U.S.C. §§ 2201 and 2202.

4. Venue is proper in the Western District of North Carolina pursuant to 28 U.S.C. § 1391 (b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial District and Bank of America is headquartered and conducts business within this judicial District.

## PARTIES

*Plaintiff*

5. Plaintiff Daniel Marques is a 27-year-old citizen of Brazil who presently lives in New Jersey. Plaintiff Marques is a May 2013 graduate of the Kean University College of Business and Public Management in New Jersey. He majored in Finance and graduated with a 3.4 GPA.

6. Plaintiff Marques is not a citizen of the United States. The U.S. Department of Homeland Security ("DHS") granted Plaintiff Marques deferred action and authorization to work in the U.S. through the Deferred Action for Childhood Arrivals ("DACA") initiative. Plaintiff Marques had work authorization with a future date of expiration when he applied to and was denied the Practice Management Development Associate position at Bank of America. He continues to have work authorization and deferred action. Plaintiff Marques does not require a sponsor in order to be authorized to work in the United States.

*Defendant*

7. Defendant Bank of America is an American multinational financial services company headquartered in Charlotte, North Carolina.

8. Defendant Bank of America, by soliciting, conducting, and transacting business in North Carolina, engages in continuous, permanent, and substantial activity within the state.

## FACTUAL ALLEGATIONS

*Background*

9. The United States Citizenship and Immigration Services ("USCIS") provides Form I-9 to employers within the United States to allow employers to verify the identity and employment authorization of individuals they wish to hire.

10. The Immigration Reform and Control Act of 1986 requires employers to complete and maintain a Form I-9 for each of their employees, whether such employees are U.S. citizens or noncitizens. *See* 8 U.S.C. § 1324A.

11. Both employees and employers must complete Form I-9. An employee must provide the employer with acceptable documents confirming both his identity and employment authorization.

12. Acceptable documents for Form I-9 verification are listed on the form and include, among others, a federal Employment Authorization Document ("EAD"). The EAD proves an individual is allowed to work in the United States for a specific time period. By itself an EAD establishes both identity and employment authorization. No further proof is necessary to satisfy the documentation requirement of Form I-9.

13. Employers may not specify which document(s) the employee may present to establish employment authorization and identity. Form I-9 warns employers that "[i]t is illegal to discriminate against work-authorized individuals. Employers CANNOT specify which document(s) an employee may present to establish employment authorization and identity. The

3

refusal to hire or continue to employ an individual because the documentation presented has a future expiration date may also constitute illegal discrimination."

14. On June 15, 2012, the Secretary of DHS announced that the agency, through its exercise of prosecutorial discretion, would not seek to remove certain immigrants brought to the United States as children but instead consider them for grants of deferred action. The initiative is known as DACA.

15. Deferred action under DACA is a discretionary grant of authorized stay in the United States by the federal government. Deferred action under DACA is valid for a period of two years and is renewable for additional two-year periods.

16. DACA recipients are eligible to obtain federal work authorization and work in the United States. Work authorized DACA recipients possess an EAD and a Social Security number.

17. DACA's purpose, as explained by President Obama was to "[stop] expel[ling] talented young individuals who . . . [have] been raised as Americans; understand themselves to be part of this country . . . [and] who want to staff our labs, or start new businesses or defend our country."[1]

18. As of March 31, 2018, USCIS had approved 814,058 initial applications for DACA.[2]

---

[1] President Barrack H. Obama, *Remarks by the President on Immigration* (June 15, 2012), http://www.whitehouse.gov/the-press-office/2012/06/15/remarks-president-immigration (last visited April 2, 2018).

[2] USCIS, *Number of Form 1-821D, Consideration of Deferred Action for Childhood Arrivals by Fiscal Year, Quarter, Intake and Case Status: Fiscal Year 2012-2018* (March 31, 2018), https://www.uscis.gov/sites/default/files/USCIS/Resources/Reports%20and%20Studies/Immigration%20Forms%20Data/All%20Form%20Types/DACA/DACA_Quarterly_Report_4.2.18.pdf.

19. DACA recipients are among many noncitizens who possess an EAD. Other noncitizens who possess work authorization that is subject to a specific validity period include: spouses of professional work visa holders; asylum applicants; survivors of human trafficking; individuals transitioning into LPR status; individuals with Temporary Protected Status; humanitarian parolees; deferred action recipients, including beneficiaries of the Violence Against Women Act; spouses and children of foreign government officials and exchange visitors; and student visa holders.

*Bank of America's Discriminatory Policy*

20. Defendant Bank of America intentionally discriminates against noncitizen applicants for employment in the United States on the basis of alienage by utilizing a facially discriminatory policy and/or practice that categorically denies the opportunity to enter employment contracts to lawfully present noncitizens who are authorized to work in the U.S. and whose valid federal work authorization contains a future expiration date.

21. Defendant Bank of America further subjects noncitizen applicants to employment discrimination on the basis of alienage and to additional requirements that are not imposed on U.S. citizen applicants, and rejects the noncitizen applicants who cannot satisfy the additional requirements.

22. On or about April 4, 2016, Defendant Bank of America denied Plaintiff Marques's application for a job as a Practice Management Development Associate within the Financial Advisor Program of the company's wealth management division on the basis of these policies and/or practices, because he was a noncitizen with a valid EAD and despite the fact that Plaintiff Marques was authorized to work in the United States.

5

23. On or about March 9, 2016, Plaintiff Marques applied for a position as a Practice Management Development Associate for Short Hills New Jersey and surrounding areas within the Financial Advisor Program of Merrill Lynch Wealth Management, Defendant Bank of America's wealth management division. Plaintiff Marques submitted his application through Defendant Bank of America's online job application portal.

24. Defendant Bank of America's job listing for the Practice Management Development Associate position contained no limitation based on the duration of a candidates' work authorization.

25. However, the job listing specified that applicants were required to have legal authorization to work in the United States "now and in the future without sponsorship."

26. In completing his application for employment with Defendant Bank of America, Plaintiff Marques answered "yes" to the following question on the "Employment Eligibility Questionnaire: . . . Are you able to present the proper documentation of employment eligibility upon your date of hire?"

27. Plaintiff Marques also answered "yes" to the following question on the "Employment Eligibility Questionnaire: . . . Are you legally authorized to work in the United States?"

28. Plaintiff Marques also answered "no" to the "Employment Eligibility Questionnaire" question: "Will you now or in the future require sponsorship for employment visa status (e.g. H1B Visa Status)?"

29. On March 18, 2016, Defendant Bank of America's Vice President, Executive Recruiter for the Mid Atlantic Market, Jeanne Gardner-McDarris emailed Plaintiff Marques to

notify him that his initial application qualified him for the next phase of the application process, which was a telephone interview.

30. On March 22, 2016, Ms. Gardner-McDarris emailed Plaintiff Marques and invited him to participate in a 30-40 minute telephone interview. Plaintiff Marques accepted the invitation and proposed Wednesday, March 30, 2016 at 5 p.m.

31. On March 23, 2016, Ms. Gardner-McDarris confirmed the interview to discuss the Practice Management Development Associate "hiring process and position."

32. During the March 30, 2016 interview between Plaintiff Marques and Ms. Gardner-McDarris, Ms. Gardner-McDarris stated that she was impressed by Plaintiff Marques's application. During the interview, Ms. Gardner-McDarris informed Plaintiff Marques that as a non-citizen applicant, he was required to be eligible to work in the U.S. "without limitations."

33. After the interview, on March 30, 2016, Ms. Gardner-McDarris sent a follow-up email to Plaintiff Marques in which she stated her intention to recommend Plaintiff Marques for "further interviews" with the "Money Management team." Ms. Gardner-McDarris concluded the email by writing that she wished Plaintiff Marques the "best of luck through the remainder of our interview process" and "look[ed] forward to hearing how [he] progress[ed]."

34. In response to Ms. Gardner-McDarris's March 30, 2016 post-interview email, Plaintiff Marques emailed Ms. Gardner-McDarris on March 30, 2016 to thank her for the interview and seek clarification on Ms. Gardner-McDarris's statement that he be eligible to work in the U.S. "without limitations." Plaintiff Marques explained that he was a recipient of DACA with a valid EAD that was renewable every two years. Plaintiff Marques also attached a copy of his EAD to his email. Plaintiff Marques asked Ms. Gardner-McDarris whether his work authorization through deferred action would "disqualify him from the opportunity at hand."

7

35. On March 31, 2016, Ms. Gardner-McDarris acknowledged receipt of Plaintiff Marques's March 30, 2016, email and stated that she would refer the matter to her manager and operations manager.

36. On April 4, 2016, Ms. Gardner-McDarris called Plaintiff Marques to inform him that despite her recommendation, Plaintiff Marques's receipt of DACA disqualified him from further consideration for the Practice Management Development Associate position.

37. On April 5, 2016, Plaintiff Marques sent a follow-up email to Ms. Gardner-McDarris in which he asked Ms. Gardner-McDarris to provide more specific information as to the reason for his disqualification, including the names of individuals within Defendant Bank of America with whom Ms. Gardner-McDarris conferred.

38. On April 6, Plaintiff Marques sent a second follow-up email to Ms. Gardner-McDarris asking for clarification as to why Defendant Bank of America prevented Plaintiff Marques's application from proceeding to the next stages of the interview process.

39. Plaintiff Marques has not received a response from Ms. Gardner-McDarris or anyone else from Defendant Bank of America.

40. If Plaintiff Marques did not belong to a subclass of non-citizens whose work authorization have a future expiration date, Defendant Bank of America would have entered into an employment contract with Plaintiff Marques.

41. DACA recipients are not the only class of noncitizens who possess federal work authorization but are ineligible to work for Defendant Bank of America because of its facially discriminatory policy and/or practice that discriminates on the basis of alienage. Defendant Bank of America's requirements for entering into a work contract also discriminate against work-

8

Case 3:18-cv-00228-MOC-DSC    Document 1    Filed 05/03/18    Page 8 of 15

authorized asylees, deferred action recipients, trafficking survivors and relatives of visa holders, among other classes of noncitizens who are authorized to work in the United States.

## CLASS ACTION ALLEGATIONS

42. Plaintiff Marques brings his class allegations under Fed. R. Civ P. 23 (a), (b)(2), (c)(4) and (b)(3) on behalf of a class defined as follows: All noncitizens who are within the jurisdiction of the United States and authorized to work in the United States, who were denied employment with Defendant Bank of America under the company's policies and/or practices for hiring work-authorized noncitizens between April 4, 2016 and the date of judgment in this action (the "Class").

43. Plaintiff Marques is a member of the Class.

44. Upon information and belief, the members of the Class are so numerous that joinder of all of them is impracticable. Defendant Bank of America is a multinational corporation with offices throughout the United States, USCIS has approved over 800,000 applications for DACA, and there are thousands of individuals who, despite having work authorization do not meet Defendant Bank of America's requirements for employment. Plaintiff Marques does not know the precise number of Class members because this information is within the possession of Defendant Bank of America.

45. Questions of law and fact are common to the Class and these questions predominate over any questions affecting only individual members. Common questions include, among others: (1) whether it is Defendant Bank of America's policy or practice to reject job applicants or terminate current workers who are authorized to work in the United States because they are not United States citizens and because they possess valid work authorization that is limited in duration; (2) whether Defendant Bank of America's policy, as set forth above, deprives Plaintiff and the

Class of the right to contract for work in the United States in violation of 42 U.S.C. § 1981; (3) whether Plaintiff Marques and the Class are entitled to back-pay relief; (4) whether Plaintiff Marques and the Class suffered harm by reason of Defendant's unlawful policy; (5) whether Plaintiff Marques and the Class are entitled to compensatory damages; (6) whether Plaintiff Marques and the Class are entitled to punitive damages; (7) whether equitable and injunctive relief for the Class is warranted; and (8) the scope of a resulting permanent injunction.

46. Plaintiff Marques's claims are also typical of the claims of the Class because: (1) Plaintiff Marques was within the jurisdiction of the United States and not a citizen of the United States; (2) Plaintiff Marques was authorized to work within the United States; (3) Plaintiff Marques applied for a position at Defendant Bank of America; and (4) Plaintiff Marques was rejected because of alienage. These claims are substantially shared by each and every Class member. All of the claims arise from the same course of conduct of Defendant Bank of America, and the relief sought is common.

47. Plaintiff Marques will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff Marques has no conflict with any Class member. Plaintiff Marques is committed to the goal of altering Defendant Bank of America's hiring policies and practices to end discrimination against Plaintiff Marques and those who are similarly situated by virtue of their noncitizenship and legal authorization to work in the United States.

48. Plaintiff Marques has retained competent counsel experienced in complex employment discrimination class actions.

49. The precise number of individuals affected by Defendant Bank of America's unlawful policy and practice is ascertainable through Defendant Bank of America's records and therefore the proposed class is ascertainable.

50. Class certification is appropriate pursuant to Fed. R. Civ. P. 23 (b)(2) because Defendant Bank of America has acted and/or refused to act on grounds that are generally applicable to the Class, which makes declaratory and injunctive relief with respect to Plaintiff and the Class as a whole appropriate. Defendant Bank of America has refused to hire and/or has terminated noncitizens ostensibly because they are not citizens or are noncitizens whose federal work authorization is limited as to duration of time. The Class members are entitled to injunctive relief to end Defendant Bank of Americas' common, uniform, unfair, and discriminatory policy and/or practice including priority instatement and other relief that will make Class members whole.

51. Class certification is also appropriate pursuant to Fed. R. Civ. P. 23 (b)(3) because common questions of fact and law predominate over any questions affecting only individual members of the Class. Furthermore, a class action is superior to other available methods for the fair and efficient adjudication of this litigation since joinder of all members is impracticable. The Class members have been damaged and are entitled to recovery as a result of Defendant Bank of America's common, uniform, unfair, and discriminatory policy and/or practice. Damages are capable of measurement on a class-wide basis and will be calculated based on the wages lost due to Defendant Bank of America's unlawful policy and/or practice. The propriety and amount of punitive damages are based on Defendant Bank of America's conduct making these issues common to the Class. Plaintiff Marques and the Class will rely on common evidence to resolve their legal and factual questions. There are no pending actions raising similar claims. Defendant Bank of America engages in continuous, permanent, and substantial activity in the Western District in North Carolina. There will be no undue difficulty in the management of this litigation as a class action.

**COUNT I – ALIENAGE DISCRIMINATION**
(42 U.S.C. §1981)

52. Plaintiff Marques incorporates by reference the allegations in all preceding paragraphs.

53. Plaintiff Marques brings this claim on his own behalf and on behalf of the Class.

54. Plaintiff Marques is a person within the jurisdiction of the United States.

55. Plaintiff Marques is not a citizen of the United States.

56. Plaintiff Marques is lawfully present and authorized to work in the United States.

57. Defendant Bank of America intentionally discriminated against Plaintiff and the Class on the basis of alienage by denying them contracts to work or deterring them from opportunities because they are noncitizens whose federal work authorization is time limited and despite their legal authorization to work in the United States.

58. Defendant Bank of America's intentional discrimination against Plaintiff and the Class has interfered with their right to make and enforce work contracts.

59. Defendant Bank of America's facially discriminatory policy and/or practice of denying work opportunities to Plaintiff and the Class based on their alienage, despite their legal authorization to work in the United States, has harmed Plaintiff and the Class and constitutes unlawful alienage discrimination in violation of 42 U.S.C. § 1981.

60. Plaintiff Marques and Class members have no plain, adequate, or complete remedy at law to redress the wrongs alleged in this Complaint, and the injunctive relief sought in this action is the only means to secure complete and adequate relief. Plaintiff Marques and the Class he seeks to represent now suffers, and will continue to suffer, irreparable injury from Defendant Bank of America's discriminatory acts and omissions.

61. Defendant Bank of America's conduct has caused, and continues to cause, Plaintiff Marques and Class members substantial losses in earnings and other work benefits.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Marques and the Class pray for relief as follows:

62. Certification of the case as a class action on behalf of the proposed Class;

63. Designation of Plaintiff Daniel Marques as a Representative on behalf of the Class;

64. Designation of Plaintiff Marques's counsel of record as Class counsel;

65. A declaratory judgment that the practices complained of herein are unlawful and violate 42 U.S.C. § 1981;

66. A preliminary and permanent injunction against Defendant Bank of America and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, to restrain them from engaging in each of the unlawful policies, practices, customs, and usages set forth herein; an order restoring Plaintiff Marques and Class members to their rightful positions at Bank of America, as applicants, contractors, or employees, or in lieu of instatement or reinstatement, an order for front pay (including interest) and benefits;

67. Back-pay (including interest and benefits) for the Plaintiff Marques and Class Members;

68. All damages sustained as a result of Defendant Bank of America's conduct, including damages for emotional distress, humiliation, embarrassment, and anguish, according to proof;

69. Exemplary and punitive damages in an amount commensurate with Defendant Bank of America's ability to pay and deter future conduct;

70. Costs incurred herein, including reasonable attorney's fees to the extent allowable by law;

71. Pre-judgment and post judgment interest, as provided by law; and

72. Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

## DEMAND FOR JURY TRIAL

73. Pursuant to Fed. R. of Civ. P. 38, Plaintiff Marques hereby demands a jury trial for all claims so triable.

Dated: May 3, 2018
Respectfully submitted,

By: */s/* Daniel C. Lyon

Daniel Lyon
Elliot Morgan Parsonage PLLC
300 E. Kingston Ave, Suite 200
Charlotte, NC 28203
T: 704.707.3705
*dlyon@emplawfirm.com*

Helen Parsonage
Elliot Morgan Parsonage PLLC
426 Old Salem Road
Winston-Salem, NC 27101
T: 336.714.4480
*hparsonage@emplawfirm.com*

THE MEXICAN AMERICAN LEGAL
DEFENSE AND EDUCATIONAL FUND

Thomas Saenz*
634 Spring St., 11th Floor
Los Angeles, CA 90014
T: 213-629-2512
*tsaenz@maldef.org*

Nina Perales*
110 Broadway, Suite 300
San Antonio, TX 78205
T: 210- 224-5476
*nperales@maldef.org*

Burth López*
1016 16th Street, Suite 100,
Washington, D.C. 20036
T: 202-572-0695
*blopez@maldef.org*

*\*Pending Admission Pro Hac Vice*

*Attorneys for Plaintiff*